IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-D-02596-WYD-MJW

QWEST CORPORATION, a Colorado corporation,

    Plaintiff,

v.

THE PUBLIC UTILITIES COMMISSION OF COLORADO, a regulatory agency of the State of Colorado;
GREGORY E. SOPKIN, in his official capacity as a Commissioner of the Public Utilities Commission of Colorado;
POLLY PAGE, in her official capacity as a Commissioner of the Public Utilities Commission of Colorado; and
CARL MILLER, in his official capacity as a Commissioner of the Public Utilities Commission of Colorado;,

    Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Plaintiff Qwest Corporation's Appeal from a November 16, 2004, decision of The Public Utilities Commission of Colorado ("the PUC"). Qwest brings this appeal pursuant to section 252(e)(6) of the Federal Telecommunications Act of 1996 (the "Telecommunications Act"). Qwest filed its Opening Brief on March 18, 2005. The Commission filed a Response Brief on May 2, 2005, and Qwest filed its Reply Brief on May 27, 2005. A hearing was held on Thursday, August 25, 2005.

The issue raised in this appeal is whether, pursuant to various provisions of the

Telecommunications Act, the Master Services Agreement between Qwest Corporation ("Qwest") and MCImetro Access Transmission Services, L.L.C. ("MCImetro"), is an "interconnection agreement" that must be filed with the PUC for review and approval. In the Master Services Agreement, Qwest, an incumbent local exchange carrier or "ILEC," agrees to provide a product called Qwest Platform Plus™ ("QPP") to MCImetro, a competitive local exchange carrier or "CLEC," for a negotiated price (the "QPP Agreement").  On July 23, 2004, MCImetro filed a motion for approval of the QPP Agreement with the PUC.  Qwest moved to dismiss the application for approval and asserted that the PUC lacked jurisdiction to review the QPP Agreement.  The Commission disagreed, and on November 16, 2004, issued an Order Approving Interconnection Agreement, Docket No. 96A-366T, ("Final Order"), stating that "[t]he Qwest Corporation Platform Plus Master Service Agreement must be filed as an interconnection agreement for approval by the Commission."  Qwest appeals the PUC's decision and seeks (1) a declaratory judgment that the PUC's Final Order violates 47 U.S.C. § 252 of the Telecommunications Act, and (2) a permanent injunction to prevent the PUC from enforcing the Final Order against Qwest with regard to the QPP Agreement.

II.     BACKGROUND

This Court has jurisdiction over this matter pursuant to 47 U.S.C. § 252(e)(6), which provides in relevant part that "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement

or statement meets the requirements of section 251 of this title and section." I review *de novo* issues concerning the PUC's procedural and substantive compliance with the Telecommunications Act, and whether the PUC has met the specific requirements of federal and state law. *U.S. West Communications, Inc. v. Hix*, 986 F. Supp. 13, 19 (D. Colo. 1997).

      A.      <u>Telecommunications Act - §§ 251 and 252</u>

The Telecommunications Act of 1996, 47 U.S.C. § 251 et seq., was designed to end monopolies in the local telephone market by requiring local telephone carriers to open their facilities, services and equipment to competitors for a negotiated price. *See Atlas Telephone Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256, 1259-60 (10th Cir. 2005); *Mainstream Marketing Services, Inc. v. F.T.C.*, 358 F.3d 1228, 1248 (10th Cir. 2004); *Hix*, 986 F. Supp. at 14. Pursuant to § 251 of the Telecommunications Act, it is the "[g]eneral duty" of an ILEC, such as Qwest, "to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers . . .." 47 U.S.C. § 251(a)(1). Specific "interconnection" duties are set forth in § 251(b) & (c). Section 251(b) requires an ILEC (1) not to prohibit or unreasonably limit resale of their services, (2) provide number portability, (3) provide dialing parity, (4) provide access to rights-of-way, and (5) establish reciprocal compensation arrangements. Section 251(c) requires an ILEC to (1) negotiate agreements to fulfill the duties described in § 251(b)(1) - (5) & (c) in good faith, (2) provide interconnection of their network with the network of any requesting telecommunications carrier, (3) provide access to unbundled network elements ("UNEs"), (4) offer their services for resale, (5) provide notice of changes, and

-3-

(6) provide reasonable conditions for collocation.

Section 252 of the Telecommunications Act sets forth procedures for negotiation, arbitration, and approval of interconnection agreements. Section 252(a)(1) provides that:

> [u]pon receiving a request for interconnection, services, or network elements <u>pursuant to section 251</u> of this title, an [ILEC] may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in <u>subsections (b) and (c) of section 251</u> of this title. . . .  The agreement, including any interconnection agreement negotiated before February 8, 1996, shall be submitted to the State commission under subsection (e) of this section.

47 U.S.C. § 252(a)(1) (emphasis added). Section 252(e)(1) provides that "[a]ny interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission. A state commission to which an agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies." Based on the language in § 252(a)(1) & (e)(1), the PUC concluded that Qwest must file the QPP Agreement with the PUC for approval.

B. <u>The Parties' Positions on Appeal</u>

On appeal, Qwest asserts that in ruling that the QPP Agreement must be filed as an interconnection agreement, the PUC exceeded its authority under the Telecommunications Act.[1] According to Qwest, the phrase in § 251(a)(1) which states "[u]pon receiving a request for interconnection, services, or network elements <u>pursuant</u>

---

[1] After concluding that the QPP Agreement must be filed, the PUC approved the QPP Agreement. Qwest does not contend that this approval was in error, only that the PUC lacks the power to either approve or reject the QPP Agreement.

to section 251 of this title," means that the § 252(e)(1) filing requirement relates solely to agreements involving those specific interconnection duties, services, or network elements that an ILEC is required to provide pursuant to § 251(b) & (c). Put another way, it is Qwest's position that "the filing obligations of section 252 arise only if a section 251 service or element is the subject of the agreement." Opening Brief at 24.

Here, the QPP consists of two network elements - "switching" and "shared transport."[2] Pursuant to § 251(c)(3), ILECs have a duty to provide nondiscriminatory access to network elements on an unbundled basis. However, § 251(c)(3) does not require an ILEC to provide unbundled access to all network elements. The Federal Communications Commission recently determined that switching and shared transport are no longer subject to the unbundling requirement set forth in § 251(c)(3).[3] *See*

---

[2]Generally, "switching" is the process by which a call on the network is routed to the called party. "Shared Transport" refers to the sharing of interoffice facilities that link switches together and connect the network of one carrier to the network of another carrier.

[3]Section 251(d)(2) states that:

In determining what network elements should be made available for purposes of subsection (c)(3) of this section, the Commission shall consider, at a minimum, whether

    (A) access to such network elements as are proprietary in nature is necessary; and

    (B) the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer.

Qwest notes that the prices for switching and shared transport, as set forth in the QPP Agreement are market-based prices, and are no longer subject to the "total element long run incremental cost ("TELRIC") that the FCC mandates be used for

Order on Remand, *In the Matter of Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 20 F.C.C.R. 2533, 2005 WL 289015 (Feb. 4, 2005). Qwest argues that because these network elements are not ones that an ILEC is required to provide under § 251, the QPP Agreement is not an "interconnection agreement" within the meaning of § 252(e)(1).

Qwest concedes, however, that it remains obligated to provide switching and shared transport under § 271 of the Telecommunications Act[4]. Qwest further acknowledges that the QPP Agreement allows switching and shared transport elements to be used with other network elements for which Qwest still has a duty to provide under § 251(c)(3), but points out that those network elements are provided pursuant to a separate, preexisting interconnection agreement between the parties. Indeed, the QPP Agreement states that "[t]his agreement is offered by Qwest in accordance with Section 271 of the Act."

The PUC agrees that Qwest is only required to provide switching and shared transport on an unbundled basis pursuant to § 271. However, the PUC notes that § 252(e), unequivocally states that "[a]ll" interconnection agreements be filed. According to the PUC, switching and shared transport "clearly fall into the category of 'interconnection.'" Response Brief at 21. In addition, the PUC contends that the QPP

---

elements required by section 251(c)(3).

[4] Section 271 sets forth the process by which Regional Bell Operating Companies (ROBC's) can apply for authority to provide "interLATA," or long distance, services. Many of the unbundled network elements (UNEs) that have been removed from the list of UNEs under § 251(3)(c) must still be provided unbundled pursuant to § 271(c)(2)(B).

Agreement is an agreement negotiated as the result of Qwest having received "a request for interconnection, services, or network elements pursuant to section 251." The PUC states that "there is no question that the QPP Agreement 'creates' and 'contains' obligations on the part of Qwest to continue to provide the interconnection, services, and unbundled network elements previously provided in accordance with section 251(c)."  Response Brief at 23.  Thus, the PUC asserts that "[t]he QPP Agreement must be filed and approved in accordance with 47 U.S.C. § 252(a)(1) and § 251(e)(1) or some combination of the two sections."

      The primary authority Qwest relies upon in support of its interpretation of §§ 251 and 252 is an October 4, 2002, Memorandum Opinion and Order issued by the Federal Communications Commission ("FCC") ("Declaratory Order").  2002 WL 31204893, 17 F.C.C.R. 19337 (Oct. 4, 2002).  The Declaratory Order addresses Qwest's petition for a declaratory ruling on "the scope of the mandatory filing requirement set forth in section 252(a)(1) of the [Telecommunications Act]."  In its petition, Qwest asserted that certain ILEC agreements should not be subject to section 252(a)(1), including (a) agreements defining business relationships and administrative procedures; (b) settlement agreements; and (c) agreements regarding "matters not subject to sections 251 or 252," such as agreements involving "network elements that have been removed from the national list of elements subject to mandatory unbundling."  Declaratory Order at ¶ 3. The FCC granted Qwest's request in part, and denied it in part.  The FCC declined to find that certain categories of agreements, such as settlement agreements and agreements containing dispute resolution and escalation provisions, are per se outside

the scope of 252(a)(1). Declaratory Order at ¶¶ 9 and 12. In the context of this discussion, the FCC observed that an agreement that creates an "ongoing obligation pertaining to [the requirements of §§ 251(b) & (c)] is an interconnection agreement that must be filed pursuant to section 252(a)(1)." Declaratory Order at ¶ 8. In a footnote, the FCC further stated "[w]e therefore disagree with the parties that advocate the filing of all agreements between an incumbent LEC and a requesting carrier. . . . Instead, we find that only those agreements that contain an ongoing obligation relating to section 251(b) or (c) must be filed under 252(a)(1)." Declaratory Order at n. 26.

III.   ANALYSIS

The services to be provided in the QPP Agreement - shared transport and switching - are "network elements" related to "interconnection." Section 252(e) clearly states that "any" interconnection agreement "shall be" submitted to the state commission for approval. The issue raised in this appeal, however, is whether all agreements that relate to "interconnection" are "interconnection agreements" subject to filing under § 252(e), or whether only those agreements that relate to the specific duties set forth in § 251(b) & (c) are "interconnection agreements" within the meaning of § 251(e).

To resolve this issue, I turn to the plain language of § 252(a)(1) & (e). *Quarles v. U.S. ex rel. Bureau of Indian Affairs*, 372 F.3d 1169, 1172 (10th Cir. 2004). I must attempt to construe the words of the statute "in their ordinary sense," and give operative effect to every word. *Quarles*, 372 F.3d at 1172. The first sentence of § 252(a)(1) refers to agreements negotiated following "a request for interconnection,

services, or network elements pursuant to section 251 . . . ." I disagree with Qwest's assertion that the phrase "pursuant to section 251" means a request for those services or network elements specifically listed in section 251(b) & (c). Nothing in the plain language of the statute suggests that I should ascribe such a narrow meaning to this phrase. As set forth above, § 251 contains both the general requirement that telecommunication carriers "interconnect" with the "facilities and equipment of other telecommunication carriers," as well as certain specific duties and obligations. Moreover, § 252 contemplates that even those agreements an ILEC enters with a "requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 . . . shall be submitted to the State commission under subsection (e) of this section." Based on the plain language of the statute, I find that the § 252 is not limited solely to agreements involving the specific duties and obligations set forth in § 251(b) & (c). The phrase "pursuant to section 251" refers to both the general and specific duties set forth in § 251, including the duty of telecommunication carriers to "interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers." I find that the QPP is an interconnection agreement that must be filed pursuant to § 252(a)(2) & (e)(1).

I am not persuaded that any of the authorities cited by Qwest, including the Declaratory Order, require a different result. As an initial matter, I find that the Declaratory Order does not address the precise issue presented in this appeal. Qwest relies heavily on the language in ¶ 8 and footnote 26 of the Declaratory Order, in which the FCC states that agreements involving set forth in sections 251(b) and (c) are

appropriately deemed "interconnection agreements." However, the FCC did not directly address whether agreements involving access to network elements that were no longer subject to the mandatory unbundling requirements contained in sections 251(b) and (c), should be excluded from the section 252(a)(1) filing requirements. Moreover, it appears that the FCC has recently sought comment "regarding incumbent LEC obligations to file commercial agreements, under section 252 of the Act, governing access to network elements for which there is no section 251(c)(3) unbundling obligation." *See* Order and Notice of Proposed Rulemaking, *In the Matter of Unbundled Access to Network Elements*, and *Review of Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 19 F.C.C. Rcd. 16783, 2004 WL 1900394, ¶ 13 (Aug. 20, 2004). I agree with the PUC that this recent inquiry suggests that the FCC did not take a definitive position on this issue in the Declaratory Order. Finally, in the body of the Declaratory Order the FCC specifically "decline[d] to establish an exhaustive, all-encompassing 'interconnection agreement' standard," and encouraged state commissions "to take action to provide further clarity to [ILECs] and requesting carriers concerning which agreements should be filed for their approval." Declaratory Order at ¶ 10. The PUC's action are consistent with this direction.

The parties cite no published cases, nor am I aware of any published cases, that address the issues presented here. The parties acknowledge the existence of a single, unpublished opinion from the District of Montana in which the Magistrate Judge concluded that because the agreement at issue involved a service or element that was not being provided pursuant to section 251, the agreement was not an "interconnection

agreement" as contemplated in section 252. *Qwest v. Schneider et al.*, CV-04-053-H-CSO, Order on Qwest's Motion for Judgment on Appeal (D. Mont. June 9, 2005) (unpublished). For the reasons set forth in this Order, I do not find the reasoning in the *Schneider* case persuasive, and decline to adopt that reasoning here.

III. <u>CONCLUSION</u>

For the reasons set forth above, I affirm the PUC's Order that the QPP Agreement must be filed as an interconnection agreement for approval by the Commission, and I deny Qwest's request for declaratory judgment and injunctive relief.

Qwest Corporation's Appeal from The Public Utilities Commission of Colorado's Order of November 16, 2004, is **DENIED**.

Dated: March 24, 2006

                                        BY THE COURT:

                                        <u>s/ Wiley Y. Daniel</u>
                                        Wiley Y. Daniel
                                        U. S. District Judge